David H. Madden
Mersenne Law
9600 S.W. Oak Street
Suite 500
Tigard, Oregon  97223
(503)679-1671
ecf@mersenne.com

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

|  |  |  |
|---|---|---|
| **COBBLER NEVADA, LLC,** | ) | Civil Action No.: ........... 3:15-cv-00866-ST |
| *Plaintiff* | ) | |
| | ) | **DEFENDANT'S MOTION TO DISMISS:** |
| *v.* | ) | **REPLY BRIEF** |
| | ) | |
| **Thomas GONZALES**, | ) | |
| *Defendant* | ) | |
| | ) | |

### DEFENDANT'S REPLY

Plaintiff has helpfully clarified that its "indirect infringement" claim is actually one for alleged "contributory infringement."  This boils the dispute down to two discrete issues of law on which the parties disagree, namely:

1.  Can a plaintiff meet its obligation to allege "notice" by alleging notice of infringement of works *of others* – works not involved in the suit?

*Defendant's Rule 12(b)(6) MOTION TO DISMISS: Reply Brief*

2. Does paying the bill for Internet data service at a premises constitute "inducing, causing or materially contributing to" all copyright infringement allegedly committed by any individual at the premises?

Defendant submits that the answer to both of these questions is "**NO**," and a negative answer to either question is dispositive for the purposes of the present motion.

## I.   NOTICE OF ALLEGED INFRINGEMENT

Plaintiff focuses exclusively on one part of Defendant's challenge to the "knowledge" prong of the contributory-infringement case: whether *actual*, or merely *constructive*, knowledge must be alleged.  On the strength of a 1992 case applying the common-law mailbox rule to a taxpayer's claim that she had mailed her return timely, Plaintiff asks this Court to extend the rule from the physical, envelope-and-stamps world to the electronic realm.  No consideration is given to the fact that physical mail (delivered by a government corporation charged with exactly that task) is significantly different from electronic mail (delivered through fortuitous cooperation among anyone who cares to operate an email server on the Internet).  Neither has Plaintiff presented any authority for extending the mailbox rule.  But even if the Court was inclined to indulge Plaintiff in this unwarranted extension of law, there is another problem of notice that Plaintiff fails to even acknowledge.

The second problem is whether the notice (actual or constructive) concerns Plaintiff's work.  Plaintiff's argument is based on the faulty premise that "notice" for purposes of contributory infringement can come from alleged awareness of other alleged infringements of other entities' copyrights.  Every time Plaintiff refers in its brief to "the infringing activity," Plaintiff is referring to the allegation that *other*

*Defendant's Rule 12(b)(6) MOTION TO DISMISS: Reply Brief*

*infringements*, of other works not at issue in this case, were committed using an Internet connection that is billed to Defendant.  This is not the state of the law, and indeed, the *UMG* case Plaintiff cites to insinuate that Defendant "buried [his] head in the sand" holds the opposite:

> It is undisputed that, until the filing of this lawsuit, [plaintiff] UMG 'had not identified to [defendant] Veoh any specific infringing video available on Veoh's system.'  UMG's decision to forgo the DMCA notice protocol 'stripped it of the most powerful evidence of a service provider's knowledge – actual notice of infringement from the copyright holder.' [Citations] […]

> '[A]bsent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material.'

> *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1020-21 (9th Cir. 2013)

In short, the notice required to plead a claim for contributory infringement must concern the copyright alleged to have been infringed.  Plaintiff has not pled such notice, and has not represented that it *could* plead it.  For this reason alone, count two should be dismissed for failure to state a claim.

## II.    MATERIAL CONTRIBUTION

Plaintiff responds to Defendant's charge that no "material contribution" facts are alleged by citing ¶¶ 34 and 35 of its First Amended Complaint:

> 34.  Defendant knowingly or with willful disregard permitted and after multiple notices, facilitated and promoted the use of the Internet for the infringing of plaintiff's exclusive rights under The Copyright Act by others.

35. After hundreds of express notices and warnings, defendant failed to reasonably secure, police and protect the use of their [*sic*] Internet service and or computers against use for improper purposes such as piracy, including the downloading and sharing of the motion picture by others.

Paragraph 34 contains nothing but legal conclusions, and to the extent that "failure to act" in ¶ 35 counts as a fact, it is one with literally *no* distinguishing power. Assuming (as we must) that *someone* infringed Plaintiff's copyright, the allegation is true of every single person in the world – *everyone* failed to thwart the infringer.

Plaintiff has not represented that it could allege any facts from which one might infer that Defendant "facilitated and promoted the use of the Internet for the infringing of plaintiff's exclusive rights," but its statement that "[p]roviding Internet service is sufficient to materially contribute to infringing activity," (Plaintiff's Response, docket 29 at p. 7) suggests that it believes paying the bill for residential Internet service constitutes material contribution to infringement.  This is not even *remotely* the holding of the *Ellison* case on which Plaintiff relies.

In *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004), "[t]he Court agrees with the findings of the court in *Netcom* that '[p]roviding a service that allows for the automatic distribution of all Usenet postings, infringing and noninfringing,' can constitute a material contribution when the [Internet service provider] knows or should know of infringing activity on its system."

But Plaintiff does not allege that Defendant "provided a service that allows for the automatic distribution of all Usenet postings."  It does not allege that he wrote or distributed the BitTorrent software alleged to have been used by the purported direct infringer.  It does not allege that Defendant did anything *at all*.  It alleges that

*Defendant's Rule 12(b)(6) MOTION TO DISMISS: Reply Brief*

Defendant *failed to do* something – something that everyone else *also* failed to do.

What Plaintiff might be able to allege (though it has not done so yet) is that Defendant paid for another company to provide Internet access to a residence – he paid another company to transport data between users at the residence and websites, email servers, and other computers around the world.  But even if the transport of data was directly attributable to Defendant – if the bits traveled through his own routers and along his own wires, he *still* has not done anything like the defendants in *Ellison v. Robertson* (*supra*, AOL "stor[ed] infringing copies of Ellison's works on its USENET groups and provid[ed] the groups' users with access to those copies," *id.* at 1078) or *Grokster* ("[when defendants] began to distribute their free software, each one clearly voiced the objective that recipients use it to download copyrighted works, and each took active steps to encourage infringement." *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 923-34 (2005))

Plaintiff uses the shorthand "Internet service" to conceal the clear difference between an individual paying the bill for data transmission service at a private residence, and a commercial enterprise operating data centers, store-and-forward servers, network devices and transmission lines serving millions of customers.  The latter might form the basis for "material contribution," but Defendant is not aware of *any* court *ever* holding that the former can.

On the other hand, there is good reason to adopt the contrary position.  As Judge Thomas Rice of the Eastern District of Washington wrote in January, 2014:

> The underlying premise of Plaintiff's argument is that internet subscribers have an affirmative duty to ensure that their internet access cannot be used by a third party for an illegal purpose.  [*Citations*]

*Defendant's Rule 12(b)(6) MOTION TO DISMISS: Reply Brief*

Neither *Sony* nor *Grokster* supports such a sweeping premise.  In fact, these cases actually undermine Plaintiff's proposed rule.  *Sony* holds that vicarious liability for another's infringement cannot arise from the mere distribution of a product that is "widely used for legitimate, [non-infringing] purposes." 464 U.S. at 442.  There can be no serious dispute that internet access meets this description.  Thus, under *Sony*, the mere act of making internet access available to a third party (whether permissively or inadvertently) cannot give rise to vicarious liability for copyright infringement as a matter of law.

*Grokster* is even more compelling.  That case holds that vicarious liability may arise from *actively encouraging* a third party to use a product for an infringing purpose.  *See* 545 U.S. at 936-37 ("[O]ne who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties.").  *Grokster* essentially carves out an exception to *Sony*'s "safe harbor" rule for persons who distribute a product capable of both infringing and non-infringing uses *with the intent that the product be used to infringe*.  *Id*. at 937-41 & n. 12.  Notably, the case holds that a mere "failure to take affirmative steps to prevent infringement," standing alone, cannot trigger vicarious liability.  *Id*. at 939 n. 12.  Thus, *Grokster* effectively forecloses any argument that private consumers have an affirmative obligation to prevent others from using their internet access for illegal copyright infringement.

U.S. District Court, Eastern District of Washington, case no. 2:13-cv-115-TOR, docket 106 (1/22/2014), 7:5~8:8 (copy attached as Exhibit A)

Of course, Judge Rice's decision is not binding on this Court, but his analysis is sound and directly on point, and in the absence of guidance from the Oregon bench, Defendant respectfully submits that it should be applied here.

///

//

///

///

*Defendant's Rule 12(b)(6) MOTION TO DISMISS: Reply Brief*

## Conclusion

Plaintiff's factual allegations are insufficient to make out a case of contributory infringement against Defendant. An essential element of the "knowledge" prong is missing (and Plaintiff has not represented that it could amend to cure this defect); and there is no support under existing law nor under a proposal for a reasonable extension of existing law to hold a residential Internet subscriber liable for infringements allegedly committed by others using the service he pays for.

For the foregoing reasons, Defendant respectfully requests that Plaintiff's second cause of action be dismissed.

| 21 January 2016 | s/David H. Madden/ |
| --- | --- |
| Date | David H. Madden, SBN OR080396 |
| | Attorney for Defendant Thomas GONZALES |
| | Mersenne Law |
| | 9600 S.W. Oak Street |
| | Suite 500 |
| | Tigard, Oregon 97223 |
| | dhm@mersenne.com |
| | (503)679-1671 |

## <u>EXHIBIT A</u>

**Copy of Order Granting in part and Denying in part
Defendants' Motion to Dismiss**

1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7    ELF-MAN, LLC,

8                            Plaintiff,

9        v.

10   CHARLES BROWN, et al.,

11                           Defendants.

|  |  |
|--|--|
| NO:  13-CV-0115-TOR | |
| ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS | |

12

13        BEFORE THE COURT is a motion to dismiss filed by Defendants

14   Josephine Geroe and David Starr ("Defendants") (ECF No. 76).  This matter was

15   submitted for consideration without oral argument.  The Court has reviewed the

16   briefing and the record and files herein, and is fully informed.

17                            BACKGROUND

18        Plaintiff Elf-Man, LLC ("Plaintiff") has sued Defendants for infringing upon

19   its copyright to a motion picture entitled *Elf-Man*.  Plaintiff's primary theory of

20   liability is that Defendants illegally copied the movie via a peer-to-peer file sharing

ORDER ON MOTION TO DISMISS ~ 1

protocol known as BitTorrent.  In the alternative, Plaintiff alleges that Defendants "indirectly infringed" upon its copyright by failing to prevent third parties from copying the movie using their IP addresses.  In the instant motion, Defendants move to dismiss Plaintiff's claims for indirect infringement for failure to state a claim.  Defendants also seek dismissal of the entire Amended Complaint due to defect in the manner in which Plaintiff has pled its claims.  For the reasons discussed below, the Court will dismiss only the indirect infringement claims.

DISCUSSION

A motion to dismiss for failure to state a claim tests the legal sufficiency of the plaintiff's claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will not do."  *Id.* at 555, 557.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

1    A complaint must also contain a "short and plain statement of the claim

2    showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This

3    standard "does not require detailed factual allegations, but it demands more than an

4    unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

5    678 (quoting *Twombly*, 550 U.S. at 555). In assessing whether Rule 8(a)(2) has

6    been satisfied, a court must first identify the elements of the plaintiff's claim(s) and

7    then determine whether those elements could be proven on the facts pled. The

8    court should generally draw all reasonable inferences in the plaintiff's favor, *see*

9    *Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it

10   need not accept "naked assertions devoid of further factual enhancement." *Iqbal*,

11   556 U.S. at 678 (internal quotations and citation omitted).

12       In ruling upon a motion to dismiss, a court must accept all factual allegations

13   in the complaint as true and construe the pleadings in the light most favorable to

14   the party opposing the motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979,

15   988 (9th Cir. 2001). The court may disregard allegations that are contradicted by

16   matters properly subject to judicial notice or by exhibit. *Id.* The court may also

17   disregard conclusory allegations and arguments which are not supported by

18   reasonable deductions and inferences. *Id.*

19       The Ninth Circuit has repeatedly instructed district courts to "grant leave to

20   amend even if no request to amend the pleading was made, unless ... the pleading

ORDER ON MOTION TO DISMISS ~ 3

1  could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

2  F.3d 1122, 1130 (9th Cir. 2000). The standard for granting leave to amend is

3  generous—the court "should freely give leave when justice so requires."  Fed. R.

4  Civ. P. 15(a)(2).  In determining whether leave to amend is appropriate, a court

5  must consider the following five factors: bad faith, undue delay, prejudice to the

6  opposing party, futility of amendment, and whether the plaintiff has previously

7  amended the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995

8  (9th Cir. 2011).

9  **A. Alternative Pleading Under Rule 8(d)**

10      Federal Rule of Civil Procedure 8(d)(2) allows a plaintiff to assert multiple

11  claims "alternatively or hypothetically."  Fed. R. Civ. P. 8(d)(2).  When multiple

12  claims are asserted in the alternative, a legal deficiency in one claim does not

13  defeat the remainder of the claims. *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes

14  alternative statements, the pleading is sufficient if any one of them is sufficient.").

15  Alternative claims may be asserted "regardless of consistency" between theories of

16  liability.  Fed. R. Civ. P. 8(d)(3).

17      Defendants argue that the Amended Complaint should be dismissed in its

18  entirety due to a deficiency in the manner in which Plaintiff has pled its alternative

19  claims.  Specifically, Defendants suggest that Plaintiff's use of the phrase "and/or"

20  defeats an inference of liability as to any Defendant given that the third alternative

ORDER ON MOTION TO DISMISS ~ 4

1  claim for "indirect infringement" fails as a matter of law.  *See* ECF No. 76 at 6 ("A

2  plaintiff who makes a list of 'and/or' allegations fails to state a claim if any of the

3  alternative possibilities fail[s] to state a claim.") (emphasis in original).

4        The Court finds no deficiency in the pleading of Plaintiff's alternative

5  claims.  The Amended Complaint alleges that "Defendants and each of them have

6  illegally and without authorization from Plaintiff copied, downloaded, shared and

7  uploaded Plaintiff's motion picture using the BitTorrent system, and/or contributed

8  to or permitted, facilitated or promoted such conduct by others."  ECF No. 26 at ¶

9  23.  The Amended Complaint further specifies that each claim is "stated in the

10  alternative" and specifically cites Rule 8(d)(2) in conjunction with the indirect

11  infringement claim.  ECF No. 26 at 21, 23 & ¶¶ 150-176.  Notwithstanding its

12  occasional use of the phrase "and/or," the Amended Complaint specifically alleges

13  that each individual Defendant is liable for direct and contributory infringement.

14  *See* ECF No. 26 at 150-166.  These allegations distinguish this case from others in

15  which courts have read "and/or" allegations to preclude an inference of liability.

16  Accordingly, the Court reads the Amended Complaint to allege that each defendant

17  is liable for either (1) direct infringement and contributory infringement (First and

18  Second Claims); or, in the alternative, (2) indirect infringement (Third Claim).

19  The fact that the indirect infringement claim fails as a matter of law (discussed

20

immediately below) does not warrant dismissal of the entire Amended Complaint.[1]

Fed. R. Civ. P. 8(d)(2).

### B. Indirect Infringement Claim

Plaintiff alleges that Defendants are liable for "indirect infringement" of its copyright for "fail[ing] to secure, police and protect the use of their internet service against illegal conduct, including the downloading and sharing of Plaintiff's motion picture by others." ECF No. 26 at ¶ 170.  This is essentially a "fallback" claim which applies to any Defendant who did not personally download the Elf-Man movie.  Plainly stated, Plaintiff's theory is that these Defendants are liable for "permit[ing] other persons to access the Internet by way of their assigned IP address[es] without adequate supervision and with apparent disregard of the property rights of others." ECF No. 85 at 13.

Defendants have moved to dismiss this claim for lack of a cognizable legal theory.  Plaintiff concedes that this claim is not directly supported by any existing precedent, *see* ECF No. 85 at 18, but maintains that its novel theory of "indirect" infringement is viable under *Sony Corp. of America v. Universal City Studios, Inc.*,

---

[1] Defendants have not challenged the viability of Plaintiff's direct infringement and contributory infringement claims.  *See* ECF No. 76 at 1 (limiting scope of motion to indirect infringement claim).

ORDER ON MOTION TO DISMISS ~ 6

1    464 U.S. 417 (1984), and *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,

2    545 U.S. 913 (2005).  In Plaintiff's view, *Sony* and *Grokster* lay the groundwork

3    for vicarious liability when a defendant fails to "secure" his or her internet access

4    against copyright infringement committed by a third party.

5          The Court respectfully disagrees.  The underlying premise of Plaintiff's

6    argument is that internet subscribers have an affirmative duty to ensure that their

7    internet access cannot be used by a third party for an illegal purpose.  ECF No. 85

8    at 17-18.  Neither *Sony* nor *Grokster* supports such a sweeping premise.  In fact,

9    these cases actually undermine Plaintiff's proposed rule.  *Sony* holds that vicarious

10   liability for another's infringement cannot arise from the mere distribution of a

11   product that is "widely used for legitimate, [non-infringing] purposes."  464 U.S. at

12   442.  There can be no serious dispute that internet access meets this description.

13   Thus, under *Sony*, the mere act of making internet access available to a third party

14   (whether permissively or inadvertently) cannot give rise to vicarious liability for

15   copyright infringement as a matter of law.

16          *Grokster* is even more compelling.  That case holds that vicarious liability

17   may arise from *actively encouraging* a third party to use a product for an infringing

18   purpose.  *See* 545 U.S. at 936-37 ("[O]ne who distributes a device with the object

19   of promoting its use to infringe copyright, as shown by clear expression or other

20   affirmative steps taken to foster infringement, is liable for the resulting acts of

ORDER ON MOTION TO DISMISS ~ 7

infringement by third parties."). *Grokster* essentially carves out an exception to *Sony*'s "safe harbor" rule for persons who distribute a product capable of both infringing and non-infringing uses *with the intent that the product be used to infringe*. *Id.* at 937-41 & n. 12.  Notably, the case holds that a mere "failure to take affirmative steps to prevent infringement," standing alone, cannot trigger vicarious liability.  *Id.* at 939 n. 12.  Thus, *Grokster* effectively forecloses any argument that private consumers have an affirmative obligation to prevent others from using their internet access for illegal copyright infringement.

Plaintiff suggests that Defendants may be vicariously liable for having "failed to secure their [internet] access as required by their ISP agreements."  ECF No. 85 at 13-14 n. 3.  The thrust of this argument is that Plaintiff is the "intended beneficiary" of a standard provision contained in the contracts between Defendants and their internet service providers which prohibits Defendants from using their internet access for illegal activity.  ECF No. 85 at 14-15.

Assuming for the sake of argument that Defendants actually agreed to such a provision—and that Plaintiff is an intended beneficiary thereof—there is no basis for imposing vicarious liability.  As the Supreme Court explained in *Sony*, holding a defendant vicariously liable for a third party's copyright infringement effectively expands the scope of the monopoly granted to the copyright owner into areas not specifically contemplated by the Copyright Act.  *See* 464 U.S. at 440-42.  Where,

ORDER ON MOTION TO DISMISS ~ 8

1   for example, a copyright owner seeks to hold a VCR manufacturer vicariously

2   liable for infringement facilitated by its product, a finding of liability effectively

3   grants the copyright owner "the exclusive right to distribute" VCRs—a right not

4   specifically granted by the Copyright Act.  *Id.* at 441 n. 21.  For this reason, courts

5   faced with novel theories of vicarious liability must be "circumspect" in construing

6   the scope of a copyright owner's monopoly.  *Id.* at 431.  The guiding principle is

7   that the benefit conferred by the copyright owner's monopoly must "ultimately

8   serve the cause of promoting broad public availability of literature, music and other

9   arts."  *Id.* at 432 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151,

10  156 (1975)).

11        Applying that principle here, the Court finds that holding private internet

12  users vicariously liable for copyright infringement committed by a third party on

13  an "intended beneficiary" theory runs counter to the underlying purpose of the

14  Copyright Act.  Instead of promoting the "broad public availability" of materials

15  that can be accessed via the internet, such a policy would discourage consumers

16  from purchasing private internet access for fear of being held liable for third-party

17  copyright infringement.  At bottom, *Sony* counsels that copyright owners must

18  endure a certain level of infringement when the proposed remedy—an expansion

19  of their monopolies—would unduly frustrate the public interest.  That reasoning

20  applies with particular force to Plaintiff's novel theory of "indirect infringement,"

ORDER ON MOTION TO DISMISS ~ 9

which would effectively expand Plaintiff's monopoly into the realm of private internet access.  Under *Sony*, such a result cannot stand.  Accordingly, the Court will dismiss Plaintiff's alternative claims for indirect infringement with prejudice for lack of a cognizable legal theory.

## C. Motion for a More Definite Statement

As an alternative to dismissal of Plaintiff's indirect infringement claim, Defendants have moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).  In light of the foregoing, the Court need not address this alternative argument.

**IT IS HEREBY ORDERED:**

The motion to dismiss filed by Defendants Josephine Geroe and David Starr (ECF No. 76) is **GRANTED** in part and **DENIED** in part.  Plaintiff's claims for "indirect infringement" of its copyright (Third Claim for Relief) are **DISMISSED** with prejudice.  Plaintiff's claims for direct infringement (First Claim for Relief) and contributory infringement (Second Claim for Relief) remain pending.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel and the pro se Defendants at their addresses of record.

**DATED** January 22, 2014.



THOMAS O. RICE
United States District Judge

ORDER ON MOTION TO DISMISS ~ 10

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the document entitled:

**DEFENDANT'S MOTION TO DISMISS: REPLY BRIEF**

was served upon the parties listed below on the date indicated,

☐　　by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made:

　　　☐　by delivery of a true copy of the document to the party to be served;

　　　☐　by delivering a true copy of the document to the dwelling house or usual place of abode of the person to be served, to any person 14 years of age or older residing in the dwelling house or usual place of abode of the person to be served;

　　　☐　by leaving a true copy of the document during working hours at an office maintained by the party to be served for the conduct of business, with the person who is apparently in charge;

　　　☐　by mailing a true copy of the document to the party by first class mail and by any of the following: certified, registered, or express mail with return receipt requested;

☐　　by delivering a copy of the document to the individual personally;

☐　　by leaving a copy of the document at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

☐　　by delivering a copy of the document to an agent authorized by appointment or by law to receive service of process;

☒　　by electronic filing notification (PACER); *or*

☐　　other:  courtesy copy by electronic mail to  crowell@crowell-law.com　　　　　　

Carl D. Crowell, Esq.
Crowell Law
943 Liberty Street S.E.
P.O. Box 923
Salem, Oregon  97308-0923
Attorney for Plaintiff COBBLER NEVADA, LLC

　　　21 January 2016　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　Date　　　　　　　　　David H. Madden