IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| COBBLER NEVADA, LLC, | Case No. 3:15-cv-00866-SB |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| THOMAS GONZALES, | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

This is an action for violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, based on the alleged unlawful downloading and distribution of Plaintiff's copyrighted motion picture, *The Cobbler*, using peer-to-peer file sharing software referred to as BitTorrent. Plaintiff asserts two claims against Thomas Gonzales ("Gonzales"), copyright infringement and indirect copyright infringement.

1 - FINDINGS AND RECOMMENDATION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Gonzales moves to dismiss Plaintiff's claim for indirect infringement, for failure to state a claim upon which relief can be granted. The Court heard oral argument on March 14, 2016. For the reasons set forth below, the district judge should grant Gonzales' motion to dismiss Plaintiff's claim for indirect infringement. In addition, this Court recommends that the district judge also dismiss Plaintiff's claim for direct infringement.

## I. BACKGROUND

On May 20, 2015, Plaintiff filed a Complaint against a Doe defendant identified only by an Internet Protocol ("IP") address. Plaintiff's investigators observed the IP address distributing Plaintiff's motion picture via a public BitTorrent network. On the same day, Plaintiff filed a motion seeking leave to expedite discovery and to issue a subpoena to Internet Service Provider ("ISP") Comcast, for information identifying the IP address subscriber. The Court granted Plaintiff's motion, and Plaintiff served a subpoena on Comcast.

Comcast returned a subpoena response identifying Thomas Gonzales as the subscriber. Plaintiff made several attempts to contact Gonzales, who was unresponsive. On July 20, 2015, Plaintiff filed a motion seeking leave to issue a Rule 45 subpoena to depose Gonzales. The Court granted Plaintiff's request for a Rule 45 subpoena, and Plaintiff attempted to serve Gonzales. Following several failed attempts to serve Gonzales personally, the Court granted Plaintiff's request for alternate or mail service. On August 25, 2015, Plaintiff served Gonzales, by mail, with a subpoena for his deposition. At oral argument, Plaintiff's counsel confirmed that he had deposed Gonzales.

Plaintiff filed a First Amended Complaint on November 4, 2015, naming Gonzales as the defendant. Plaintiff alleges that Gonzales is the subscriber originally identified as the Doe IP address, and that Gonzales copied and distributed *The Cobbler* through a BitTorrent network, in violation of Plaintiff's exclusive rights under the Copyright Act. (First Am. Comp. ¶ 26.) Plaintiff alternatively alleges that Gonzales facilitated and permitted the use of the Internet for the infringing of Plaintiff's exclusive rights under the Copyright Act, by failing to secure, police, and protect the use of his Internet service. (First Am. Compl. ¶¶ 34-35.)

## II. LEGAL STANDARD

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Id*. While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, a plaintiff must set forth a plausible claim for relief, a possible claim for relief will not do. *Id*. ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (quotations and citation omitted)). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim

entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (*quoting Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

**A.    Indirect Infringement (Second Claim for Relief)**[1]

Plaintiff alleges Gonzales is liable for contributory infringement because he "knowingly or with willful disregard . . . facilitated and promoted the use of the Internet for the infringing of [P]laintiff's exclusive rights under the Copyright Act by others." (First Am. Compl. ¶ 34.) Specifically, Plaintiff alleges that Gonzales "failed to reasonably secure, police and protect the use of [his] Internet service and or computers against use for improper purposes such as piracy, including the downloading and sharing of the motion picture by others." (First Am. Compl. ¶ 35.)

Gonzales moves to dismiss Plaintiff's contributory infringement claim, "on the ground that there is no authority under existing law . . . that would support the imposition of liability for the conduct alleged." (Def.'s Mot. Dismiss 2.) Specifically, Gonzales argues that neither the Copyright Act nor existing case law creates secondary infringement liability for a private Internet subscriber who fails to prevent infringement by others using the private subscriber's Internet service. (Def.'s Reply 5-7.)

Although "[t]he Copyright Act does not expressly render anyone liable for [another's] infringement," *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984), the Supreme Court has recognized two types of secondary copyright infringement: contributory infringement and vicarious infringement. The landmark Supreme Court case most relevant to

---

[1] In its Response to Gonzales' Motion to Dismiss, Plaintiff clarifies that its "indirect infringement" claim is premised on a theory of contributory infringement. (Pl.'s Resp. 1.)

4 - FINDINGS AND RECOMMENDATION

Plaintiff's theory of liability here, is *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005).

In *Grokster,* several entertainment companies alleged that users of Grokster and Streamcast, peer-to-peer file-sharing services, were directly infringing copyrights by "sharing" copyrighted materials over the peer-to-peer network, and that Grokster and Streamcast were contributorily infringing because they knowingly induced the infringement. The Supreme Court held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 919. The Supreme Court concluded that Grokster and Streamcast "acted with a purpose to cause copyright violations by use of software suitable for illegal use," citing evidence that Grokster and Streamcast targeted former Napster users, failed to develop filtering tools to diminish infringing activity, and profited from the infringing activity. *Id.* at 938-40. Importantly, the Supreme Court was clear that "just as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability." *Id.* at 937 (*citing Sony*, 464 U.S. at 439 n.19).

Plaintiff's theory of contributory liability here is that Gonzales was notified about infringing activity on his Internet connection, but did nothing to stop it. Plaintiff's theory of contributory liability is contrary to the Supreme Court's holding in *Grokster*. The Supreme Court was clear in *Grokster* that contributory infringement liability does not arise "merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses." *Id*. at 939 n.12 (emphasis added). Rather, secondary infringement liability arises

only by "actively encouraging . . . infringement through specific acts. . . ." *Id.* at 942*; see also Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (holding that the elements required for contributory copyright infringement liability are: (1) direct infringement by a primary infringer, (2) knowledge of the infringement, and (3) *material contribution* to the infringement).[2]

Plaintiff has not alleged that Gonzales promoted, encouraged, enticed, persuaded, or induced another to infringe any copyright, let alone Plaintiff's copyright. On the contrary, Plaintiff has alleged only that Gonzales "failed to reasonably secure, police and protect the use of [his] Internet service." (First Am. Compl. ¶ 35). Plaintiff's theory of contributory infringement is foreclosed by the Supreme Court's opinions in *Grokster* and *Sony*. Indeed, it appears that every other court presented with Plaintiff's novel theory of indirect infringement liability has rejected it. *See, e.g., Elf-Man, LLC v. Brown*, 996 F. Supp. 2d 1056, 1059 (E.D. Wash. Jan. 22, 2014) (granting motion to dismiss claim that defendants were liable for indirect infringement "'for failing to secure, police and protect the use of their internet service against illegal conduct,'" and holding that "*Grokster* effectively forecloses any argument that private consumers have an affirmative obligation to prevent others from using their internet access for illegal copyright infringement"); *Elf-Man, LLC v. Cariveau*, No. C13-0507RSL, 2014 WL 202096, at *3 (W.D. Wash. Jan. 17, 2014) (granting motion to dismiss claim that defendants were liable for indirect infringement for "'fail[ing] to secure, police

---

[2] Plaintiff has also failed to plead adequately that Gonzales had knowledge of the infringing activity. Plaintiff alleges only that notices *were sent* to Gonzales regarding infringing activity, not that Gonzales received any such notices, nor that he received any notices prior to the infringing activity relating to Plaintiff's copyright. Importantly, Plaintiff has also failed to plead that any such notices related to Plaintiff's movie, *The Cobbler*. *See Viacom Int'l. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) (holding that "general awareness that infringement may be occurring" is usually irrelevant to the specific question of whether a particular defendant violated a particular copyright held by a particular plaintiff), *cited with approval in UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1023 (9th Cir. 2013).

and protect the use of their internet service against illegal conduct,'" citing *Grokster* and *Sony*); *Thompsons Film, LLC v. Does 1-194*, No. C13-0560RSL, 2014 WL 585862, at *3 (W.D. Wash. 2014) (same).

In light of Supreme Court precedent to the contrary, this Court declines to extend contributory infringement liability to an individual who has not actively encouraged nor materially contributed to any infringing activity. The district judge should dismiss Plaintiff's second cause of action for indirect infringement, with prejudice.

### B.     Direct Infringement (First Claim for Relief)

This Court also concludes that Plaintiff's claim for direct infringement should be dismissed pursuant to Rule 12(b)(6), for failure to state a claim.

In its First Amended Complaint, Plaintiff alleges that Gonzales' IP address "has been observed and confirmed as" infringing *The Cobbler* multiple times. (First Am. Compl. ¶ 13.) The only facts Plaintiff pleads in support of its allegation that Gonzales is the infringer, is that he is the subscriber of the IP address used to download or distribute the movie, and that he was sent notices of infringing activity to which he did not respond. That is not enough. Plaintiff has not alleged any specific facts tying Gonzales to the infringing conduct. While it is *possible* that the subscriber is also the person who downloaded the movie, it is also possible that a family member, a resident of the household, or an unknown person engaged in the infringing conduct.[3] *See, e.g., Elf–Man*, 2014 WL 202096, at *2 ("While it is possible that the subscriber is the one who participated in the BitTorrent swarm, it is also possible that a family member, guest, or freeloader engaged in the infringing

---

[3] The First Amended Complaint does not allege that Gonzales' Internet connection is secured.

7 - FINDINGS AND RECOMMENDATION

conduct."); *Malibu Media, LLC v.. Tsanko*, No. 12-3899(MAS) (LHG), 2013 WL 6230482, at *10 (D.N.J. Nov. 30, 2013) ("The Court questions whether these allegations are sufficient to allege copyright infringement stemming from the use of peer-to-peer file sharing systems where the Defendant-corporation is connected to the infringement solely based on its IP address. It may be possible that Defendant is the alleged infringer that subscribed to this IP address, but plausibility is still the touchstone of *Iqbal* and *Twombly*."); *AF Holdings LLC v. Rogers*, No. 12cv1519 BTM (BLM), 2013 WL 358292, at *2 (S.D. Cal. Jan. 29, 2013) ("Because the subscriber of an IP address may very well be innocent of infringing activity associated with the IP address, courts take care to distinguish between subscribers and infringers."); *see also In re BitTorrent Adult Film Copyright Infringement Claims*, 296 F.R.D. 80, 85 (E.D.N.Y. 2012) ("[I]t is no more likely that the subscriber to an IP address carried out a particular computer function-here the purported illegal downloading of a single pornographic film-than to say that an individual who pays the telephone bill made a specific telephone call.").[4]

Plaintiff acknowledged early in this litigation that it could not identify the infringer merely by identifying the subscriber. In its Motion for Leave to Issue FRCP 45 Subpoena to Non-Party (ECF No. 8), Plaintiff sought leave to conduct a non-party deposition of subscriber Gonzales, in order to attempt to identify the actual infringer:

> In this case ISP Comcast has identified a singular subscriber that was assigned the IP address used by the Doe. . . . Independent investigations of the identified [sic] the subscriber's residence is a stand-alone structure. *But such research and efforts do not permit plaintiff to identify a specific party that is likely to be the infringer.* As such, plaintiff is left with the options of proceeding against the subscriber as named by

---

[4] Plaintiff's counsel acknowledged at oral argument that the IP address linked to the infringing conduct serves an adult foster care home operated by Gonzales. Any resident or guest of that home could be the infringer.

> Comcast and possibly substituting another party on discovery, or seeking further discovery to ascertain the identity of the true Doe defendant prior to naming a party. While the named subscriber is often the proper defendant, plaintiff wishes to ensure that investigations are complete and proper and submits that in this matter something beyond the mere identification of a subscriber by an ISP is proper before a defendant is named.

(Pl's FRCP 45 at 2) (emphasis added). Although the Court granted Plaintiff's request to depose Gonzales, the deposition apparently did not reveal any additional information regarding the infringer in this case. Nevertheless, Plaintiff amended its complaint to name Gonzales as the defendant.

Based on the facts alleged in the First Amended Complaint, Gonzales is but one of many *possible* infringers, and Plaintiff's allegation that Gonzales is *the* infringer is just a guess. *See Iqbal*, 556 U.S. at 678 (to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (citation and internal quotation marks omitted)); *see also Petzschke v. Century Aluminum Co.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (explaining that "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability," a plaintiff must allege more, "such as facts tending to exclude the possibility that the alternative explanation is true," in order to render the allegations plausible).

*Twombly* and *Iqbal* do not allow Plaintiff to guess at who is liable, and attempt to confirm liability through discovery. "Plausible" does not mean certain, but it does mean "likely," and Plaintiff has not pled sufficient facts to support its allegation that Gonzales is the likely infringer here. Accordingly, the district judge should dismiss Plaintiff's claim for copyright infringement. *See Omar v. Sea–Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6).").

## IV. CONCLUSION

For the reasons set forth above, the district judge should GRANT Defendant's Motion to Dismiss (ECF No. 27), and DISMISS Plaintiff's second claim for relief, with prejudice. In addition, the district judge should also DISMISS Plaintiff's first claim for relief, without prejudice.

## V. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 18th day of March 2016.

_____
STACIE F. BECKERMAN
United States Magistrate Judge