Carl D. Crowell, OSB No. 982049
email:  carl@crowell-law.com
Drew P. Taylor, OSB No. 135974
email:  drew@crowell-law.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **COBBLER NEVADA, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **DOE-24.21.136.125,** <br><br> Defendant. | Case No.: 3:15-cv-00866-ST <br><br> SECOND AMENDED COMPLAINT <br><br> COPYRIGHT INFRINGEMENT <br><br> DEMAND FOR JURY TRIAL |

SECOND AMENDED COMPLAINT

Pursuant to the Order of June 27, 2016 (Ecf. 40), plaintiff Cobbler Nevada, LLC

("Cobbler Nevada"), complains and alleges as follows:

JURISDICTION AND VENUE

1.      This is a suit for copyright infringement under 17 U.S.C. §§ 101 et seq. ("The Copyright

Act").

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a)

as the defendant is believed to reside in this district.

PARTIES

PLAINTIFF

4.     Plaintiff Cobbler Nevada is a Limited Liability Company with principal offices in Los Angeles, California.

The Rights of Cobbler Nevada

5.     *The Cobbler* is a major motion picture that was released in theaters in March 2015.

6.     *The Cobbler* has been registered with the United States Copyright Office by the owner, Cobbler Nevada, Registration No. PAu 3-744-688, 2014.

7.     Under The Copyright Act, Cobbler Nevada is the proprietor of all copyrights and interests needed to bring suit.

8.     The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

9.     The motion picture is currently offered for sale in commerce.

10.     Defendant had notice of plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

11.     Cobbler Nevada comes to court seeking relief as the motion picture *The Cobbler* is the subject of significant piracy and has been illegally downloaded and distributed countless times worldwide with over 10,000 confirmed instances of infringing activity traced to Oregon.

///

///

THE DEFENDANT

12.     The defendant identified herein as DOE-24.21.136.125 is currently known only by their Internet Protocol ("IP") Address 24.21.136.125 which on 04/29/2015 and at other times was observed through direct TCP/IP connection as infringing plaintiff's motion picture.

13.     Through geolocation and as confirmed by ISP Comcast, the IP address used by the defendant was used in the State of Oregon, and has been specifically traced to 12567 SE Bush St., Portland, Oregon.

14.     The defendant's IP address has been observed and confirmed as distributing plaintiff's motion picture and the motion pictures of others multiple times.

15.     The defendant's IP address has been observed as associated with the peer-to-peer exchange of a large number of copyrighted titles through the BitTorrent network.

16.     The volume and titles of the activity associated with the defendant's IP address indicates that the defendant is not a young child, but an adult with adult tastes.

17.     The defendant's IP address was at that time of observed infringement managed by Internet Service Provider ("ISP") Comcast, who on information and belief, generally assigns an IP address to a single party for extended periods of time, often for months and provides Wi-Fi systems with notable pre-installed security and passwords.

18.     The subscriber in this action has been identified as Thomas Gonzales who provided internet service to a limited number of parties at the residence of 12567 SE Bush St., Portland, Oregon.

19.     Based on the persistent and continuous level of infringing activity, on information and belief the infringer is believed to be one of a limited number of two or three regular occupants of 12567 SE Bush St., Portland, Oregon.

BACKGROUND

PEER-TO-PEER INTERNET PIRACY

*Operation*

20.     BitTorrent, also known as peer-to-peer file sharing, has become one of the most common

systems for users to illegally dispense huge amounts of data, including motion pictures, in digital

format.

21.     The BitTorrent protocol enables computers to exchange large files (such as motion

pictures) without creating a heavy workload for any individual source/computer.  It allows users

to interact directly with each other to: (1) make files stored on a user's computer (e.g., motion

pictures) available for copying by other users; (2) search for files stored on other computers; and

(3) transfer exact copies of files from one computer to another over the Internet.

22.     The use of BitTorrent requires multiple intentional acts.  A user must load specific

software, use the software to join the network, search for a file, and then select the file they wish

to download.  As each user or peer joins the network and requests a copy of a file, they form a

type of social contract to not only download the file, but to be a part of the network to allow the

file to be downloaded by others. Each new peer requesting the file receives pieces of the data

from each peer who already has downloaded the file, and then in turn makes that content

available to others.

23.     Since the BitTorrent protocol also generally limits a peer's ability to download unless he

or she also uploads or shares, there is substantial incentive for each peer to remain online and

continue to make files available for other peers to download because this will maximize his or

her download speed and access to content.

24.     The defendant in this action has been observed as persistently making plaintiff's motion

picture available to others in furtherance of the BitTorrent network.

2d AMDD. COMPLAINT                                                                    Page 4 of 9

*The Business of Piracy*

25.     Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file

sharing, is often a for-profit business as many software clients, torrent sites and networks

generate millions of dollars in revenue through sales and advertising.

26.     To increase the value of the advertising and sometimes subscription access sold by

torrent sites, many parties work to expand the pool of available titles and speed of downloads

available by increasing the number of member peers and thus the desirability of their clients and

networks.  To accomplish this they often reward participants who contribute by giving them

faster download speeds, greater access, or other benefits.

27.     Defendant's participation in the BitTorrent exchange of plaintiff's motion picture is the

type of activity that torrent sites use to promote their business and likely directly furthered the

for-profit business of at least one torrent site.

28.     Many parties, and possibly the defendant have been compensated for their participation

in expanding the availability of pirated content to others through BitTorrent networks, including

plaintiff's movie, even if only through being granted greater access to other pirated content.

29.     The use of BitTorrent does more than cause harm through the simple theft of intellectual

property.  The BitTorrent distribution of pirated files is a model of business that profits from

theft through sales and advertising and provides a system of rewards and compensation to the

participants, each of whom contribute to and further the enterprise.

30.     Based on activity observed associated with defendant's IP addresses, defendant is a

prolific proponent of the BitTorrent distribution system advancing the BitTorrent economy of

piracy.

*Harm to Plaintiff and Others*

31.    Digital piracy, including BitTorrent piracy, costs the entertainment industry over $80 billion per year.

32.    As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines.  In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal.  But it is a big deal.  Under U.S. law, stealing intellectual property is just that – stealing.  It hurts artists, the music industry, the movie industry, and others involved in creative work.  And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

33.    In 2013, in recognition of the growing problems and challenges with counterfeiting and piracy, The Oregon House of Representatives passed House Memorial 2, which made the following findings:

> Whereas the United States and other nations share the challenge of combating intellectual piracy and the counterfeiting of intellectual property such as … films… and technologies that affect the quality of life; and
> Whereas intellectual piracy and counterfeiting have a significant impact on Oregon's economy, and the economies of other states and of nations around the world, which results in job and earnings losses, reduced tax revenues and increased threats to public health and safety; and
> …
> Whereas protecting and enforcing intellectual property rights is crucial to the future of our innovation-based economy; and
> Whereas industries that use intellectual property extensively generate nearly $7.7 trillion in gross output and account for more than 60 percent of total exports from our nation; and
> Whereas industries that use intellectual property extensively … employ more than 19 million Americans, whose salaries average about 60 percent higher than salaries in industries that do not make extensive use of intellectual property; and

Whereas intellectual property infringement can undermine the nation's economic security; and

Whereas violations of intellectual property rights, ambiguities in the law and a lack of enforcement create uncertainty in the marketplace and in the legal system and undermine consumer trust; and

Whereas intellectual property, including trademarks, [are] essential …; and

…

Whereas failing to adequately protect and enforce intellectual property rights will increase counterfeiting and illicit trade;

…

34.    The impact of piracy is far greater than the mere loss of a single sale or loss due to the distribution of one copy of a motion picture.  Piracy undermines the economy, job base, and tax base on which our citizens rely and promotes a general disregard for the respect of rights of others.

35.    As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to the both the United States of America and the State of Oregon.

FIRST CLAIM FOR RELIEF

COPYRIGHT INFRINGEMENT

36.    Defendant, without the permission or consent of Cobbler Nevada, copied and distributed plaintiff's motion picture through a public BitTorrent network.

37.    Defendant's actions infringed Cobbler Nevada's exclusive rights under The Copyright Act.

38.    Defendant's conduct has been willful, intentional, in disregard of and indifferent to Cobbler Nevada's rights.

39.    As a direct and proximate result of defendant's conduct, Cobbler Nevada's exclusive rights under 17 U.S.C. § 106 have been violated.

40.     Cobbler Nevada is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

41.     The conduct of the defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

42.     Pursuant to 17 U.S.C. §§ 502 and 503, Cobbler Nevada is entitled to injunctive relief prohibiting the defendant from further contributing to the infringement of Cobbler Nevada's copyrights and ordering that defendant destroy all copies of the motion picture made in violation of Cobbler Nevada's rights.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendant as follows:

A.     For a finding that the defendant willfully infringed plaintiff's rights;

B.     For entry of permanent injunction enjoining defendant from directly, indirectly or contributory infringing plaintiff's rights, including without limitation by using the internet to reproduce or copy plaintiff's motion picture, to distribute plaintiff's motion picture, or to make plaintiff's motion picture available for distribution to the public, except pursuant to a lawful license or with the express authority of plaintiff. And further directing defendant to destroy all unauthorized copies of plaintiff's motion picture;

C.     Statutory damages pursuant to 17 U.S.C. § 504;

D.     For plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

E.     For such other and further relief as the Court deems proper.

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.


DATED: July 5, 2016


Respectfully submitted,

CROWELL LAW

*/s/ Carl D. Crowell*

Carl D. Crowell, OSB No. 982049
carl@crowell-law.com
Drew P. Taylor, OSB No. 135974
drew@crowell-law.com
503-581-1240
Of attorneys for the plaintiff


2d AMDD. COMPLAINT                                                Page 9 of 9